1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11 LOUIE GILBERT JIMENEZ,              No.  CIV.S-04-0708 DAD

12        Plaintiff,

13    v.                               <u>ORDER</u>

14 JO ANNE B. BARNHART,
   Commissioner of Social
15 Security,

16        Defendant.
   _____/

17

18        This social security action was submitted to the court,

19 without oral argument, for ruling on plaintiff's motion for judgment

20 on the pleadings and defendant's cross-motion for summary judgment.

21 For the reasons explained below, the decision of the Commissioner of

22 Social Security ("Commissioner") is reversed and this matter is

23 remanded with the direction to grant benefits.

24                   **PROCEDURAL BACKGROUND**

25        Plaintiff Louie Gilbert Jimenez, Sr. applied for

26 Supplemental Security Income ("SSI") under Title XVI of the Social

                               1

Security Act (the "Act").  (Transcript (Tr.) at 46-47.)  The

Commissioner denied plaintiff's application initially and on

reconsideration.  (Tr. at 32-35, 38-41.)  Plaintiff then applied for

benefits under Title II of the Act and that application was

immediately escalated to the hearing level so that it could be

considered in connection with plaintiff's application for SSI.[1]  (Tr.

at 14.)  Pursuant to plaintiff's request, a hearing was held before

an administrative law judge ("ALJ") on September 8, 2003, at which

time plaintiff was represented by counsel.  (Tr. at 238-56.)  In a

decision issued on November 21, 2003, the ALJ determined that

plaintiff was not disabled.  (Tr. at 11-23.)  The ALJ entered the

following findings in this regard:

> 1.   The claimant has not engaged in
>      substantial gainful activity since May
>      24, 2001.
>
> 2.   The medical evidence establishes that
>      the claimant has severe alcohol abuse,
>      a depressive disorder and borderline
>      intellectual functioning but that he
>      does not have an impairment or
>      combination of impairments listed in,
>      or medically equal to one listed in
>      Appendix 1, Subpart P, Regulations
>      No.4.
>
> 3.   The claimant's allegations regarding
>      the severity of his limitations and
>      severity of his substance abuse
>      disorder is found to be not fully
>      credible for the reasons stated above.

---

[1]   The record is not clear regarding the details of this
application, which apparently was an application for Medicare
benefits -- as opposed to monetary benefits -- under Title II of the
Act.  (Tr. at 14.)  Nonetheless, the procedural background in this
regard is undisputed.

4.   The claimant cannot perform skilled or
     semiskilled work and is limited to
     unskilled work.  The claimant is also
     limited to jobs which do not require
     more than limited contact with the
     public or coworkers.  There are no
     exertional limitations (20 CFR §§
     404.1545 and 416.945).

5.   The claimant is able to perform his
     past relevant work as a floor worker
     and resaw grader.

6.   The claimant is 50-years-old, which is
     defined as closely approaching advanced
     age (20 CFR §§ 404.1563 and 416.963).

7.   The claimant has a high school
     education (20 CFR §§ 404.1564 and
     416.964).

8.   The claimant does not have any acquired
     work skills which are transferable to
     the skilled or semi-skilled work
     functions of other work (20 CFR §§
     404.1568 and 416.968).

9.   If the claimant's non-exertional
     limitations did not significantly
     compromise his ability to perform work
     at all exertional levels, section
     204.00, Appendix 2, Subpart P,
     Regulations No.4 indicates that a
     finding of not disabled would be
     appropriate.  If his capacity to work
     at all levels were significantly
     compromised, the remaining work which
     he would functionally be capable of
     performing would be considered in
     combination with he {sic} age,
     education, and work experience to
     determine whether a work adjustment
     could be made.

10.  Considering the range of work at all
     exertional levels which the claimant is
     still functionally capable of
     performing, in combination with his
     age, education, and work experience,

/////

and using the above-cited section 204.00 as a framework for decision-making, the claimant is not disabled.

11.  From the claimant's alleged onset date through the current date, the undersigned finds the claimant's substance abuse disorder met the criteria of Cooper v. Bowen, 815 F.2nd 557 (9th Cir. 1987) and therefore, the claimant would be disabled based upon his substance abuse disorder absence Public Law 104-121.  Therefore, in accordance with Section 1.05 of Public 104-121, the claimant is ineligible for either Supplemental Security Income payments or Title II Medicare benefits under the Act.

12.  The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404. 1520(f) and 416.920(f).

(Tr. at 22-23.)  The Appeals Council declined review of the ALJ's decision on February 14, 2004.  (Tr. at 4-6.)  Plaintiff then sought judicial review, pursuant to 42 U.S.C. § 405(g), by filing the complaint in this action on April 8, 2004.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the proper legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).  The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a

conclusion.  <u>Morgan</u>, 169 F.3d at 599; <u>Jones v. Heckler</u>, 760 F.2d 993,

995 (9th Cir. 1985) (citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401

(1971)).

A reviewing court must consider the record as a whole,

weighing both the evidence that supports and the evidence that

detracts from the ALJ's conclusion.  <u>See</u> <u>Jones</u>, 760 F.2d at 995.  The

court may not affirm the ALJ's decision simply by isolating a

specific quantum of supporting evidence.  <u>Id.</u>; <u>see also</u> <u>Hammock v.</u>

<u>Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence

supports the administrative findings, or if there is conflicting

evidence supporting a finding of either disability or nondisability,

the finding of the ALJ is conclusive, <u>see</u> <u>Sprague v. Bowen</u>, 812 F.2d

1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

improper legal standard was applied in weighing the evidence, <u>see</u>

<u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the

ALJ should apply the five-step sequential evaluation process

established under Title 20 of the Code of Federal Regulations,

Sections 404.1520 and 416.920.  <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137,

140-42 (1987).  This five-step process can be summarized as follows:

>           Step one: Is the claimant engaging in substantial
>           gainful activity?  If so, the claimant is found
>           not disabled.  If not, proceed to step two.
>
>           Step two: Does the claimant have a "severe"
>           impairment?  If so, proceed to step three.  If
>           not, then a finding of not disabled is
>           appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is conclusively presumed disabled.  If not, proceed to step four.

Step four: Is the claimant capable of performing his or her past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

**APPLICATION**

Plaintiff argues that the ALJ erred by: making inconsistent findings; failing to properly analyze whether plaintiff's limitations would remain absent the use of alcohol; concluding that plaintiff suffered from a disabling substance abuse problem; rejecting the opinions of plaintiff's treating physicians; failing to hear testimony from a vocational expert and in rejecting plaintiff's testimony regarding the severity of his symptoms.

/////

/////

/////

/////

Plaintiff alleges disability in this action primarily due to a mental impairment.[2]  That impairment has been given a variety of labels by plaintiff's physicians, including "psychotic depression," "psychosis," "depression," "anxiety," "psychotic disorder," "psychosis probable bipolar disorder," "bipolar disorder" and "borderline personality features or possibly schizophrenic personality."  The most recent medical treatment note in the record reflects the following diagnosis: "Bipolar Disorder Type I, Most Recent Episode Mixed, with Psychotic Features; Rule out Schizo-affective Disorder versus Schizophrenia Paranoid Type; Alcohol Abuse versus Alcohol Dependence; Narcissistic Personality Disorder."  (Tr. at 223.)

The ALJ found plaintiff disabled when all of plaintiff's impairments, including but not limited to plaintiff's "substance abuse disorder," are taken into account.  (Tr. at 19, 23.)  However, the ALJ went on to find that plaintiff's substance abuse was a contributing factor material to the determination that plaintiff is disabled.  (Tr. at 15, 19-21.)  Therefore, the ALJ denied plaintiff benefits.[3]

---

[2]  Plaintiff also has a history of gastroesophageal reflux disease, but this is secondary to the serious mental impairment from which he suffers.

[3]  As a preliminary matter plaintiff asserts in his motion that the ALJ failed to assess plaintiff's substance abuse as required by Bustamante v. Massanari, 262 F.3d 949, 953-55 (9th Cir. 2001).  In that case, the Ninth Circuit held that, in determining whether an individual is disabled, the ALJ must conduct the five-step sequential evaluation process before considering the impact of alcoholism or drug addiction.  Bustamante, 262 F.3d at 955.  According to Bustamante, the ALJ is required first to apply the five-step inquiry

Under the law, "[a]n individual shall not be considered to be disabled for purposes of [benefits under Titles II or XVI of the Act] if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). See also Bustamante, 262 F.3d at 955.

> The "key factor ... in determining whether alcoholism or drug addiction is a contributing factor material to the determination of disability" is whether an individual would still be found disabled if she stopped using alcohol or drugs. 20 C.F.R. § 404.1535(b)(1). "In making this determination, [the Commissioner] will evaluate which of [the claimant's] current physical and mental limitations ... would remain if [she] stopped using drugs or alcohol and then determine whether any or all of [her] remaining limitations would be disabling." 20 C.F.R. § 404.1535(b)(2).

Sousa v. Callahan, 143 F.3d 1240, 1245 (9th Cir. 1998). See also 20 C.F.R. §§ 404.1535(a), 416.935(a) ("If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability."). The court agrees with plaintiff that substantial evidence does not

---

to determine whether the claimant is disabled without segregating out the claimant's alcohol or drug use. Id. If the claimant is found disabled under the five-step inquiry, then the ALJ shall determine whether the claimant would still be found disabled if he or she stopped using drugs or alcohol. Id. Only after completing these steps shall the ALJ evaluate the claimant's residual functional capacity. Id. The ALJ's written decision is far from a model of clarity in applying these principles. Nonetheless, by finding plaintiff disabled when all of his impairments were considered but then finding him not disabled because his substance abuse was a contributing material factor, it appears that the ALJ adequately complied with the requirements set forth in the Bustamante decision.

support the ALJ's finding that plaintiff's substance abuse was a contributing factor material to the determination of whether the plaintiff is disabled.

The medical evidence in the record covers a little more than two years preceding the administrative hearing held on September 8, 2003, in plaintiff's case.  The evidence from approximately one year prior to the hearing is representative of the medical evidence as a whole.  Regarding plaintiff's substance abuse,[4] that evidence is summarized below.

On April 9, 2002, plaintiff consulted with a physician for the purposes of managing the medications he was taking for his bipolar disorder.  (Tr. at 213.)  That physician recommended discontinuing Paxil "as this may be activating his impulsivity and anxiety."  (Id.)  In the alternative the physician prescribed Zyprexa to be augmented by Depakote.[5]  (Id.)

A June 13, 2002, treatment note indicates that plaintiff's bipolar disorder was "improved but still not in good control."  (Tr. at 139.)  The note indicates that plaintiff was still having trouble

---

[4]   While the ALJ referred to plaintiff's "substance abuse," the evidence in the record reflects that any use of substances during the period in question was limited to alcohol.  While plaintiff has admitted to using illicit drugs in the past, there is no evidence of current drug use.

[5]   Paxil and Zoloft are both indicated for the treatment of depression, obsessive compulsive disorder and panic disorder.  See Physicians' Desk Reference 2852, 2230 (52d ed. 1998).  Risperdal, which is discussed below in this order, and Zyprexa are both indicated for the management of the manifestations of psychotic disorders.  Id. at 1310, 1512.  Depakote is indicated for treatment of manic episodes associated with bipolar disorder.  Id. at 430.

1 controlling his anger.  (Id.)  According to the note, plaintiff "blew

2 up" at some friends and got in an altercation with them.  (Id.)  An

3 increase in plaintiff's medication was to be considered.  (Id.)  No

4 alcohol or drug use was noted.  (Id.)

5        A treatment note dated June 27, 2002, states that plaintiff

6 "has been irritable recently."  (Id.)  He had gotten into another

7 fight.  (Id.) The assessment was: "Bipolar disorder not in excellent

8 [sic] by his history, although definitely improved.  He remains

9 unable to function in a normal work setting because of this."  (Id.)

10 Again, no alcohol or drug use was noted.  (Id.)

11       Plaintiff continued to seek regular medical treatment for

12 his condition.  An August 8, 2002, note indicates that plaintiff's

13 "mood has remained calm recently.  He avoids situations that are

14 likely to set him off."  (Tr. at 210.)  Plaintiff remained on

15 Depakote and Zyprexa at that time.  (Id.)  The assessment was:

16 "Bipolar disorder in better control, although he is unable to

17 function in a normal work setting."  (Id.)  On September 10, 2002,

18 plaintiff's bipolar disorder was found to be "in better control on

19 medications."  (Id.)  A treatment note from October 10, 2002, states

20 that plaintiff was on a "stable keel.  Does not go out at night in

21 his neighborhood to avoid confrontation."  (Id.)  No alcohol or drug

22 use was noted in any of these August, September or October, 2002

23 treatment notes.  (Id.)

24       On October 21, 2002, plaintiff underwent a psychological

25 examination by Joanna T. Koulianos, Ph.D.  (Tr. at 153-57.)  Dr.

26 Koulianos' reported recorded plaintiff's history of aggressive

impulses, including command-type auditory hallucinations that instruct plaintiff to "attack" others. (Tr. at 153.) With respect to drugs and alcohol, the report specifically notes: "Non-contributory for abuse of alcohol or illicit substances at this time." (Tr. at 154.) The report notes a "short-lived" use of drugs following his divorce as well as "drink[ing] heavily" following the divorce. (Id.) At the time of Dr. Koulianos' report plaintiff "consume[d] alcoholic beverages 'here and there'." (Id.) Dr. Koulianos noted various emotional and cognitive limitations and opined that plaintiff's "currently likelihood for job success over the course of the next year is likely poor." (Tr. at 157.) With respect to medication, plaintiff was on Depakote and Zyprexa at that time and had also re-started Paxil. (Tr. at 154.) It was unclear which medical professional, if any, was following plaintiff's mental health. (Id.)

On January 23, 2003, plaintiff was found to be "losing it" because he had been out of medications for about a week. (Tr. at 206.) He was getting into fights. (Id.) He did not understand how to obtain psychiatric follow-up through the county. (Id.) Plaintiff obtained medication re-fills but on February 24, 2003, he continued to avoid people, including family members. (Id.) No alcohol or drug use was noted during these months. (Id.)

On March 24, 2003, the following notations with respect to plaintiff were made: "bad temper, goes off, thinks about the worst, doesn't go out." (Tr. at 205.) Plaintiff also reported not trusting himself. (Id.) It was noted that plaintiff was serious and tense.

11

1   (<u>Id</u>.)  He did not make eye contact with his physician.  (<u>Id</u>.)  The

2   physician was unclear what to assess, noting plaintiff's report of

3   bipolar disorder but also noting "anger management issues, paranoid

4   ideation.  Sounds more schizophrenic, needs eval[uation]."  (<u>Id</u>.)

5   Plaintiff was instructed to continue taking Zyprexa and Depakote.

6   (<u>Id</u>.)  However, another anti-depressant medication, Zoloft, was

7   added.  (<u>Id</u>.)  No alcohol or drug use was noted.  (<u>Id</u>.)

8          On April 2, 2003, an Adult Comprehensive Assessment/Client

9   Plan was completed regarding plaintiff at Sacramento County mental

10  health.  (Tr. at 231-37.)  Among other things, the assessment noted

11  "a lot" of depression, hopelessness, fear, anxiety, disturbing

12  thoughts, hearing voices around people and mood swings.  (Tr. at

13  231.)  "Drinking of alcoholic beverages" and "taking illegal drugs,

14  misusing drugs" was noted as "none" (<u>id</u>.), although the report also

15  noted the drinking of "1 beer/month" (Tr. at 233).  The goals listed

16  on the plan were to reduce mood swings, anger outbursts, paranoia and

17  homicidal ideation.  (Tr. at 237.)

18         On April 23, 2003, plaintiff was found to be doing better.

19  He was pleasant and "serious but not scowling."  (Tr. at 204.)

20  Nonetheless, his medications were adjusted again; he was instructed

21  to discontinue Zoloft.  (<u>Id</u>.)  The assessment was "bipolar disorder,

22  anger management, paranoid ideation."  (<u>Id</u>.)  He was still awaiting a

23  psychiatric diagnosis.  (<u>Id</u>.)  No alcohol or drug use was noted.

24         On May 3, 2003, it was noted that plaintiff "admits to

25  drinking as much as four to five beers in one sitting, however he

26  declines that he does this on a regular basis."  (Tr. at 227.)  A

mental status examination revealed that plaintiff was intimidating,
aloof, irritable, angry, rambling and paranoid.  (Tr. at 228.)   It
was noted that he spends most of his time (about 90%) in his room to
avoid conflict with others.  (Tr. at 227, 228.)   He was taking
Depakote, Paxil and Zyprexa, although he reported non-compliance with
the Zyprexa since he associated it with shortness of breath.  (Id.)
Plaintiff was advised to discontinue taking Paxil.  (Tr. at 229.)
The diagnosis was "Bipolar I Disorder, Most Recent Episode Mixed,
With Psychotic Features; Rule out Schizoaffective Disorder versus
Schizophrenia, Paranoid Type; Alcohol Abuse Versus Dependence; Rule
Out Panic Disorder, With Agoraphobia."  (Tr. at 228.)

        Treatment notes dated June 7, 2003 (Tr. at 225-26), June
30, 2003 (Tr. at 203) and July 5, 2003 (Tr. at 223-24) continue to
reflect plaintiff's anger and thoughts of violence, although some
minor improvements were noted.  Also, during this period Zyprexa was
discontinued due to its side effects (Tr. at 225) and Risperdal was
started although that medication caused grogginess and therefore was
difficult for plaintiff to comply with (Tr. at 223).  Otherwise, as
of July 5, 2003, the date of the most recent substantive treatment
note in the record, plaintiff was compliant with his medications and
was still found to be irritable, paranoid, angry and rambling with
poor insight and judgment.  (Id.)

        In sum, the record indicates that neither plaintiff nor his
physicians have a firm grasp on or understanding of plaintiff's
disabling mental illness.  Indeed, plaintiff's condition has eluded
definitive diagnosis, due at least in part to a lack of continuity of

care.  Further, the medical evidence shows that plaintiff is hardly
on a regular medication regimen.  His medications have been altered a
number of times, either out of a need to better manage his symptoms
or as a result of intolerable side effects.  To the extent
medications have been effective, they have assisted in merely
stabilizing plaintiff's condition to a point where he continues to
feel a need to avoid people for fear of having angry, violent
outbursts.  Moreover, plaintiff's medical records contain scant
evidence that plaintiff's mental illness and resulting disability
result from alcohol abuse, much less drug abuse.  Most of plaintiff's
medical records do not even mention alcohol or drug use, except to
note that such use occurred in the past.  Further, while the drinking
of "four to five beers" "here and there" is occasionally noted in
plaintiff's medical records, no physician has tied this occasional
abuse of alcohol to plaintiff's mental illness.

        For all of these reasons, substantial evidence does not
support the finding that absent the use of alcohol or drugs plaintiff
would be able to perform his past relevant work or adjust to work
available in significant numbers in the national economy as the ALJ
found.  Neither plaintiff's various treating physicians nor the
physician who examined plaintiff opined that his very serious mental
impairments are related to his use of alcohol or drugs.  Therefore,
the ALJ erred in concluded that plaintiff's limitations would not
remain if he stopped drinking and using drugs.

/////

/////

1    In light of this error, it is unnecessary to address the

2  remainder of plaintiff's arguments.[6]  However, the appropriate remedy

3  must be determined.  The decision whether to remand a case for

4  additional evidence or to simply award benefits is within the

5  discretion of the court.  Ghokassian v. Shalala, 41 F.3d 1300, 1304

6  (9th Cir. 1994); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.

7  1990).  In this regard, the Ninth Circuit has stated: "[g]enerally,

8  we direct the award of benefits in cases where no useful purpose

9  would be served by further administrative proceedings, or where the

10 record has been thoroughly developed."  Ghokassian, 41 F.3d at 1304

11 (quoting Varney v. Sec'y of Health & Hum. Servs., 859 F.2d 1396, 1399

12 (9th Cir. 1988)).  This rule recognizes the importance of expediting

13 disability claims.  Holohan v. Massanari, 246 F.3d 1195, 1210 (9th

14 Cir. 2001); Ghokassian, 41 F.3d at 1304; Varney, 859 F.2d at 1401.

15 As shown above, the evidence indicates that plaintiff is unemployable

16 and disabled and that his use of alcohol is not a contributing factor

17 material to that disability.  Further, plaintiff filed his

18 application almost four years ago and no useful purpose would be

19 served by delaying this matter further for additional administrative

20

21         [6]   The court does note, however, that the ALJ failed to state
   clear and convincing reasons in rejecting plaintiff's testimony
22 regarding the severity of his mental illness.  See Light v. Chater,
   119 F.3d 789, 792 (9th Cir. 1997)("[T]he ALJ can reject the
23 claimant's testimony about the severity of [his or] her symptoms only
   by offering specific, clear and convincing reasons for doing so.");
24 see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  The
   ALJ discredited plaintiff's subjective testimony because, according
25 to the ALJ, plaintiff's symptoms would improve if he took his
   medications and refrained from using alcohol.  (Tr. at 20.)  As shown
26 above, this conclusion is not supported by substantial evidence.

15

proceedings.   Therefore, this matter will be remanded with the direction to grant benefits.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1.   Plaintiff's motion for judgment on the pleadings is granted;

2.   Defendant's cross-motion for summary judgment is denied; and

3.   The decision of the Commissioner of Social Security is reversed and this case is remanded with the direction to grant benefits.

DATED: September 20, 2005.

DALE A. DRCZD
UNITED STATES MAGISTRATE JUDGE

DAD:th
ddad1\orders.socsec\jimenez0708.order